UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TENNVADA HOLDINGS 1, LLC, ) | |
| ) | |
| Appellant, ) | Case No.: 2:14-cv-02090-GMN |
| vs. ) | |
| ) | **ORDER** |
| FREY IRREVOCABLE TRUST, ) | |
| KOWALSKI TRUST, and RUTH ) | |
| MAASARANI TRUST, ) | |
| ) | |
| Appellees. ) | |

In this bankruptcy appeal, Appellant Tennvada Holdings 1, LLC's ("Debtor") seeks review under 28 U.S.C. § 158(c)(1) of a trial ruling of the United States Bankruptcy Court for the District of Nevada ("the Bankruptcy Court"), finding that Appellee Frey Irrevocable Trust ("Frey") had a secured claim against Debtor's estate and Appellees Kowalski Trust ("Kowalski") and Ruth Maasarani Trust ("Maasarani") had unsecured claims against Debtor's estate. Debtor asks the Court to reverse the Bankruptcy Court's Trial Ruling. Debtor filed an Opening Brief (ECF No. 12). Appellees filed an Answering Brief (ECF No. 18), and Debtor filed a Reply Brief (ECF No. 25).

**I.      BACKGROUND**

In December 2007, Integrated Financial Associates ("IFA"), a hard-money lender, made a loan to 1837 Tennvada Investments ("1837") for $2.75 million. (Compl. ¶ 14, ECF No. 13-1; Answer ¶ 1, ECF No. 13-2). The loan funded 1837's purchase of a hotel (the "Property") in Memphis, Tennessee. (*Id.*). IFA secured its loan with a deed of trust on the Property (the "IFA Deed of Trust"), which was recorded in Tennessee on December 31, 2007. (IFA Deed of Trust, ECF No. 13-3). Subsequently, IFA assigned fractional interests in the IFA Deed of Trust to twenty-one (21) private investors (the "IFA Loan Investors"). (Compl. ¶ 14; Answer ¶ 1).

On March 21, 2009, 1837 filed for Chapter 11 bankruptcy in the Bankruptcy Court. (Answer ¶ 18). During the bankruptcy, the Bankruptcy Court approved two debtor-in-possession ("DIP") loans. (*See* DIP Loans, ECF Nos. 13-4–13-6). First, the Bankruptcy Court approved a DIP loan from Frey in the amount of $300,000 (the "First DIP Loan"). (First DIP Loan, ECF No. 13-4). Second, the Bankruptcy Court approved a DIP loan from Appellees Kowalski and Maasarani in the amount of $100,000 (the "Second DIP Loan"). (Second DIP Loan, ECF Nos. 13-5–13-6).

Frey, in an attempt to secure the First DIP Loan, recorded a deed of trust on the Property (the "First DIP Deed of Trust"). (*See* First DIP Deed of Trust, ECF No. 13-7). However, the First DIP Deed of Trust failed to provide a description of the Property or street address. (*Id.*) Moreover, Kowalski and Maasarani never recorded a deed of trust to secure the Second DIP Loan.

On October 20, 2010, the Bankruptcy Court dismissed 1837's bankruptcy. (Order, ECF No. 13-10). Following the dismissal of 1837's bankruptcy, the IFA Loan Investors created Tennvada Holdings 1, LLC ("Debtor") and transferred their interests in and claims against 1837 to Debtor. (Compl. ¶ 15; Answer ¶ 15). The IFA Loan Investors are the sole owners of Debtor, and IFA is the manager of Debtor. (*Id.*). Subsequently, IFA initiated foreclosure proceedings on the IFA Deed of Trust, and on December 28, 2010, the Property was sold to Debtor at a trustee's sale. (Answer ¶ 32, 34; Trustee's Deed, ECF No. 13-11).

On February 16, 2011, IFA and Appellees executed an agreement (the "2011 Agreement"). (The 2011 Agreement, ECF No. 13-12). Pursuant to the 2011 Agreement, IFA agreed to acknowledge the superior priority and secured status of the DIP Loans and waived all objections to the perfection and enforceability of the priority status of the DIP Loans. (*Id.*). In return, Appellees agreed to forbear proceeding with any foreclosure action on the DIP Loans until after August 1, 2011. (*Id.*).

On August 3, 2011, Frey rerecorded the First DIP Deed of Trust with a property description, which was omitted in the original filing. (*See* ECF No. 13-13).  However, no one has ever attempted to record any deed of trust for the Second DIP Loan.

On September 2, 2011, Debtor filed Chapter 11 bankruptcy in the Bankruptcy Court. (*In re Tennvada Holdings 1, LLC*, No. 11-24135-LBR).  Moreover, on April 3, 2012, Debtor filed an adversary proceeding, which is the subject of this appeal, seeking a determination that Appellees do not have a claim against Debtor. (*See* Compl.).

On September 9, 2014, the Bankruptcy Court issued its Trial Ruling, holding that Frey held a secured claim against Debtor's estate and Kowalski and Maasarani held unsecured claims against Debtor's estate. (Trial Ruling, ECF No. 13-16).

## II.  LEGAL STANDARD

The Court reviews *de novo* the Bankruptcy Court's interpretation of state exemption laws, as well as its interpretation of the Bankruptcy Code. *See Hopkins v. Cerchione (In re Cerchione)*, 414 B.R. 540, 545 (B.A.P. 9th Cir. 2009).  The Court reviews the Bankruptcy Court's factual findings for clear error. *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005); Fed. R. Bankr. P. 8013.  The Bankruptcy Court's factual findings are clearly erroneous only if the findings "leave the definite and firm conviction" that the Bankruptcy Court made a mistake. *In re Rains*, 428 F.3d at 900 (quotation omitted).

## III.  DISCUSSION

On appeal, Appellant raises several issues. (*See* Opening Brief, ECF No. 12).  However, the following issue is dispositive: Did the Bankruptcy Court err in denying rescission of the 2011 Agreement based upon mutual mistake of the parties?

"'Mutual mistake occurs when both parties, at the time of contracting, share a misconception about a vital fact upon which they based their bargain.'" *Gramanz v. Gramanz*, 930 P.2d 753, 758 (Nev. 1997) (quoting *General Motors v. Jackson*, 900 P.2d 345, 349 (Nev.

1995)). "'[A] mutual mistake is a basis for an equitable rescission of a contract.'" *Id.* (quoting *Tarrant v. Monson*, 619 P.2d 1210, 1211 (Nev. 1980)). "Likewise, a unilateral mistake can be the basis for a rescission if 'the other party had reason to know of the mistake or his fault caused the mistake.'" *Oh v. Wilson*, 910 P.2d 276, 278 (Nev. 1996) (quoting *Home Savers v. United Sec., Co.*, 741 P.2d 1355, 1356–57 (Nev. 1987)).

At trial, Debtor identified the fact that it believed was mutually mistaken by the parties to the 2011 Agreement. (Trial Transcript 14:23–15:7, ECF No. 13-17). Specifically, Debtor identified that the 2011 Agreement "was made based upon the mistake of both parties, who mistakenly believed that deeds of trust had been perfected on the debtor-in-possession loans." (*Id.* 14:23–15:1). Thus, Debtor argued that the parties to the 2011 Agreement were mistaken as to whether the DIP Loans had been perfected prior to the 2011 Agreement. (*Id.*). The Court finds that the parties to the 2011 Agreement were mutually mistaken about the perfection status of the DIP Loans.

Such mutual mistake is supported by the trial record. First, William Dyer, President and CEO of IFA, testified that at the time of IFA's foreclosure on the Property, IFA believed that the DIP Loans were perfected. (Trial Transcript 43:19–21). Furthermore, at the time of the 2011 Agreement, IFA believed that the DIP Loans had a perfected security interest in the Property. (*Id.* 54:7–22, 55:9–16, 76:15–18). Second, Omar Masarani, a representative of Appellees, testified that he believed that the DIP Loans were perfected at the time of the 2011 Agreement. (*Id.* 92:24–93:3, 112:3–14). Accordingly, at the time of the 2011 Agreement, the parties to the 2011 Agreement believed that the DIP Loans were perfected.

However, the Bankruptcy Court correctly found that the DIP Loans were unperfected at the time of the 2011 Agreement. First, the Bankruptcy Court held that the First DIP Loan was unperfected because the original filing of the First DIP Deed of Trust failed to include a description of the Property. (Trial Ruling at 11, ECF No. 13-16). Second, the Bankruptcy

Court held that the Second DIP Loan was unperfected at the time of the 2011 Agreement because a deed of trust was never filed. (*Id.* at 13).  Thus, although the parties to the 2011 Agreement both believed the DIP Loans to be perfected at the time of the 2011 Agreement, the Bankruptcy Court correctly held that the DIP Loans were unperfected.

Although, the Bankruptcy Court found that the DIP Loans were unperfected at the time of the 2011 Agreement, it held that the "2011 Agreement effectively renewed or reinstated the security interests of all the [Appellees] despite the fact that the foreclosure would have otherwise terminated those interests." (Trial Ruling at 12, ECF No. 13-16).

When analyzing the issue of whether the 2011 Agreement was void for mutual mistake, the Bankruptcy Court analyzed whether the parties were mistaken as to the fact that the IFA foreclosure had occurred prior to the 2011 Agreement. (Trial Ruling at 14–15).  Analyzing Dyer's testimony, the Bankruptcy Court found as follows:

> Bill Dyer, who signed the agreement on behalf of IFA, testified that at the time the parties executed the 2011 Agreement, he was unaware Defendants' interests in the property had not been properly perfected.  Additionally, he testified (despite being the President of IFA and the manager of Debtor) that he was unaware IFA had foreclosed on the property and purchased it at the foreclosure.  He asserted he was unaware of this because the foreclosure proceeding was done by Michael Hewgley acting as substitute trustee.  However, he also testified that he first knew of the sale on December 28th.  This is the date of the foreclosure sale.
> The Court finds this testimony inconsistent. If Bill Dyer knew of the foreclosure on December 28, 2010—the date of the sale—then he knew of the foreclosure sale at the time of the 2011 Agreement. Therefore, the Court finds Debtor's argument that the 2011 Agreement is void for mutual mistake without merit.

(*Id.*).  The Bankruptcy Court failed to analyze whether the parties to the 2011 Agreement were mutually mistaken as to the perfection of the DIP Loans, even though Debtor clearly identified such mutual mistake to the Bankruptcy Court. (*See* Trial Transcript 14:23–15:7).

Accordingly, because the trial record clearly establishes that the parties to the 2011 Agreement were mistaken as to the perfection of the DIP Loans and this fact is vital to the bargain of the 2011 Agreement, the Court finds that such mutual mistake warrants rescission of the 2011 Agreement. As a result, because the DIP Loans were unperfected at the time of the IFA foreclosure, the IFA foreclosure terminated the interests held by Appellees. Thus, the Appellees do not hold claims against Debtor's estate.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that the Trial Ruling of the United States Bankruptcy Court for the District of Nevada filed September 9, 2014, is **REVERSED**. Accordingly, the Appellees do not hold claims against Debtor's estate.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall send a copy of this Order to the U.S. Bankruptcy Court, and shall thereafter close the case.

**DATED** this __31__ day of July, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge